Ronald Ryan
Attorney for Plaintiffs
1413 E Hedrick Dr
Tucson AZ 85719
phone: (520)298-3333 fax: (520)743-1020
ronryanlaw@cox.net
AZ Bar #018140 Pima Cty #65325

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| ANTHONY TARANTOLA, | Adversary No: 11-ap-00088-EWH |
| DEBTOR AND PLAINTIFF | Case No: 09-9703-TUC-EWH |
| vs. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE CERTIFICATEHOLDERS FOR ARGENT SECURITIES INC., ASSET-BACKED-PASS-THROUGH CERTIFICATES, SERIES 2004-W8, | **COMPLAINT OBJECTING TO PROOF OF CLAIM, FOR QUIET TITLE, FOR DECLARATORY RELIEF, FOR PERMANENT INJUNCTION, AND A CONDITIONAL ACTION FOR AN ACCOUNTING AND TO OBTAIN UNAPPLIED CREDITS** |
| AND ARGENT MORTGAGE COMPANY, L.L.C., | |
| DEFENDANTS | |

COMES NOW, Anthony Tarantola, Debtor and Plaintiff, and files this Complaint Objecting to Proof of Claim, for Quiet Title, for Declaratory Relief, for Permanent Injunction, and a Conditional Action for an Accounting and to Obtain Unapplied Credits. The causes of action in the form of requests for relief are contained in those paragraphs with a heading. The remaining paragraphs contain background and factual allegations necessary or relevant to the causes of action.

1

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157; 1334; 1652; 2201; FRCP 57; and B.R. 7001, et seq. Pursuant to B.R. 3007(b), an Objection to Claim may be included in an Adversary Proceeding. Venue is appropriate in this district pursuant to 28 U.S.C. §1408 and 1409. This matter is a core proceeding.

2. Deutsche Bank National Trust Company (as Trustee in Trust for the Certificateholders for Argent Securities Inc., Asset-backed-pass-through Certificates, Series 2004-W8) ("DBNTC"), is a subsidiary of, and is also known as, Deutsche Bank Trust Corporation, aka Deutsche Bank Trust Company Americas. Deutsche Bank Trust Corporation, aka Deutsche Bank Trust Company Americas maintain their principal executive offices at 60 Wall St NYC60-4006 New York, New York, 10005, and the Chairman and CEO of both is Seth H Waugh. They are registered to do business in Arizona under the name of Deutsche Bank Trust Company Americas. DBNTC can be served with process through the Arizona Statutory Agent for Deutsche Bank Trust Company Americas, C T Corporation System 2394 E Camelback Rd Phoenix, AZ 85016, as well as through the Chairman and CEO of Deutsche Bank Trust Corporation, aka Deutsche Bank Trust Company Americas, Seth H Waugh 60 Wall St NYC60-4006 New York, New York, 10005

2. Argent Mortgage Company LLC ("Argent"), is a Delaware Corporation, registered to do business in Arizona and can be served through its Arizona Statutory Agent, National Registered Agents Inc, 638 N Fifth Ave Phoenix, AZ 85003.

3. On or about 11/7/2003, Debtor borrowed a sum of money in the amount of $377,600.00, in a mortgage loan transaction wherein Argent Mortgage Company acted in the role of "Lender" pursuant to the Note and Deed of Trust recorded on 12/23/2005 with the Pima County Recorder, Docket 12203, Page 3044 ("DOT"). The Note that was originally secured

2

by the DOT and dated 11/7/2003 and filed with the Court at Doc 35-1 Filed 12/08/09, pages 19-21 of 31, is referred to herein as the "Note." The debt evidenced by the Note when originally made is the "underlying obligation." The purported lien claim represented by this Deed of Trust is herein called the "Primary Lien." A Proof of Claim was filed on 06-29-09 by American Home Mortgage Servicing Inc ("AHMS") at Claim 15 in the Court's Claims Register, in the amount of $439,645.05. This claim is referred to herein as the "Primary Lien Proof of Claim." Exhibits attached to the claim indicate that AHMS claims to have filed the claim in the capacity of Servicing Agent for Deutsche Bank National Trust Company, as Trustee in Trust for the Certificateholders for Argent Securities Inc., Asset-backed-pass-through Certificates, Series 2004-W8.

4. The property in question in this case ("Property") is Plaintiff's Residence, and is described as:

LOT 328 OF BEL AIR RANCH ESTATES ACCORDING TO THE MAP RECORDED IN BOOK 22 OF MAPS PAGE 57 RECORDS OF PIMA COUNTY ARIZONA, OR AS MORE COMMONLY KNOWN AS 11201 E HASH KNIFE CIRCLE 85749

5. The factual bases for the filing of this complaint include the opinion of the expert witness hired by Plaintiff, and the facts discovered through independent investigations, as well as those uncovered through the course of this case, including the stay relief litigation that resulted in the Court's Memorandum Decision at doc 84, filed 07-29-10, and that Order Denying Relief from Stay, at doc 86, filed 07-29-10, entered 07-29-10.

OBJECTION TO PROOF OF CLAIM

6. On 06/29/2009, at Claim #15 in the Court's Claim Registry, a claim was filed by American Home Mortgage Servicing, Inc. ("AHMS"), which according to exhibits attached

3

to the claim indicate that AHMS claims to have filed the claim in the capacity of Servicing Agent for Deutsche Bank National Trust Company, as Trustee in Trust for the Certificateholders for Argent Securities Inc., Asset-backed-pass-through Certificates, Series 2004-W8, for primary lien claim on debtor's residence (the "POC"). Plaintiff seeks a judgment including declaratory relief as defined below, rendering the POC unsecured, invalid in all respects, or partially unsecured or invalid, according to the findings based on a preponderance of evidence presented at trial, pursuant to B.R. 3007(b).

DECLARATORY RELIEF AGAINST ARGENT

7. Upon information and belief, Argent sold and transferred the Note to the first of a series of entities within days or weeks of its execution. After said sale, Argent no longer had any interest in the Note and no power to transfer it, because it had already been sold and transferred to another. Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and FRCP 57, and A.R.S. § 12-1831, et seq, against Argent as follows: A) Argent is not the holder of the Note. B) Argent does not own any interest, beneficial or otherwise, in the Note nor in the underlying debt evidenced by the Note. C) Plaintiff is not indebted to Argent. D) Argent does not have the right to enforce the Note. E) Argent does not have a security interest in the Property.

8. Plaintiff denies that DBNTC is the owner of the Note (the "Note"). Plaintiff denies that DBNTC paid value for the Note and underlying obligation, Plaintiff denies that DBNTC is the holder of the Note. Plaintiff denies that DBNTC has the right to enforce the Note. Plaintiff denies the authenticity, validity and authority to make any indorsements on the Note, including the lack thereof. Plaintiff denies that any party owns the Note, underlying obligation, or DOT on behalf of DBNTC. Plaintiff denies that DBNTC is a holder in due

4

course ("HDC"). Since Plaintiff has denied these matters in the pleadings, it is DBNTC 's

burden of proof on each of these allegations, for each and every issue or cause of action

herein in which any such allegation is material. Furthermore, the law of standing and real

party in interest law, both require that the party claiming the right to enforce the Note in

Court be the owner of the Note, or have been granted by the proven owner complete

authority to enforce the Note . In either case, the party enforcing must be the proven holder

and there must be proof as to who is the  owner of the Note. The party claiming to be the

owner of the Note, or the holder claiming ownership on behalf of the owner, bears the

burden of proof on this issue.

DEMAND TO PRODUCE ORIGINAL NOTE TO PROVE POSSESSION

9.  Among many of the facts needed to be proven and of the documentary evidence

required to be submitted in admissible form, the party claiming to own the Note must

produce the original Note in Court, and make it available prior to trial for inspection by

Plaintiff. Plaintiff demands production of the original Note to prove possession thereof.

Cases holding that Plaintiff is not entitled to this can be distinguished and the support for

this request of Plaintiff includes: ARS § § 47-3201;[1] 47-3309; 47-3204(A); 47-3305 ( C);

47-3604; Federal Rules of Evidence ("FRE") 1002, 1003 and 1004.

10.  Because DBNTC is not a HDC, if it does not have possession of the original

Note, Plaintiff does not have to make payment on this basis alone, pursuant to ARS

§47-3305 ( C), which states that an obligor is not obliged to pay the instrument if the person

---

[1]  The transfer of possession requires physical delivery of the note "for the purpose of giving the person receiving delivery the right to enforce the instrument." U.C.C. §§ 3-203 cmt. 1, 1-201 (2002).

5

seeking enforcement of the instrument does not have the rights of a HDC and the instrument is proven to be a lost or stolen instrument. The only way to prove this is to require that the party claiming to have possession of it, bring it to Court. Because DBNTC is not a HDC, the rules for lost instruments in A.R.S. § 47-3309 do not apply. On the other hand, if DBNTC is a HDC and the original Note is not in its possession, the only way it can enforce the Note is to comply with § 47-3309. If Debtor is not obligated to pay any underlying debt, then there is no debt for the DOT to secure, which establishes the Dot to be worthless and without legal effect.

11.  Upon information and belief, Argent sold and transferred the Note to the first of a series of entities within days or weeks of its execution. After said sale, Argent no longer had any interest in the Note and no power to transfer it, because it had already been sold and transferred to another. The Argent sale was part of a series of entities that were contractually required to each own and hold the Note in succession for the Note to be successfully pooled into the Mortgage Backed Security ("MBS") Trust to which it was intended to pooled prior to the loan having been made. The funds that were loaned to Plaintiff came from investment dollars generated by the sale of interests in one or more MBS Trusts, in the form of Mortgage Backed Securities, aka Mortgage Bonds. According to the contractual requirements of the securitization documents that formed the MBS Trust, the Note had to be sold, negotiated and transferred to a number of entities in succession before the eventual sale, negotiation and transfer to the MBS Trust for pooling. In the case of the Argent Securities Inc., Asset-backed-pass-through Certificates, Series 2004-W8, the Certificate Holders of which DBNTC claims to be acting as Trustee, it is contractually and legally impossible for the Trust to ever obtain "legal title" to the Note, for the benefit of the

6

Investors, if the Note had not been sold, negotiated and transferred serially from the Argent, "Originator," to Argent Securities Inc., "Depositor," to Ameriquest Mortgage Company, "Seller," to DBNTC, as "Pool Trustee," by the "Cut-off Date" of May 1, 2004, or the "Closing Date" of May 6, 2004."). Such requirements are standard and universal with regard to MBS Trust Pools, and are mandatory. These are formalized in the Pooling and Servicing Agreement ("PSA"), and the Prospectus, among other Securitization Documents ("SD"), and necessary for the trust pool's retention of its status as a "REMIC," which is necessary to claim the tax benefits of federal REMIC law. Additional requirements in the SD are that the intervening indorsements had to be specifically payable to each transferee in proper order and only the final indorsement to the Trustee was permitted to be in blank. Without perfecting the sale to the MBS Trust and successful pooling of the Note there could be no Note held nor owned by the Trust, and without this, the Trustee has no right to enforce the Note for the benefit of the Investors. The sales, negotiations and transfers done properly as set forth above will be called the "proper serial transfers for successful pooling of the Note." The only basis that DBNTC could have to enforce the Note would be if it would be doing so as the MBS Trustee for the Investors in pooled notes in which the Debtor's Note was included. However, the sale, negotiation and transfer of the Note to DBNTC was not perfected. Since DBNTC as MBS Trustee does not hold, own or possess the right to enforce the Note, no other party, including AHMS could have the right to enforce the Note on behalf of DBNTC.

12. The securitization or attempted securitization of the Note and DOT has made the Note into a non-negotiable instrument. This is because the provisions involved in the securitization documents change the Note, such that it is no longer an unconditional

7

promise to pay a sum certain. Additionally, even if the Note were negotiable instrument, DBNTC cannot prove that it is not a HDC pursuant to the elements required by A.R.S. § 47-3302. For this and several other reasons, whatever entity claims to be the owner of the Note cannot be a HDC, as a matter of law. Though the legitimate obligee of a non-negotiable note may still enforce a debt that is evidenced by the note, when the note is non-negotiable, more proof is required than the mere presentation of the Note in Court coupled with proof that it is a "holder" under negotiable instruments law.

13. If the Note had been successfully pooled into the MBS Trust that it was intended to be pooled into, or was ever owned by any MBS Trust, it was owned in trust for the benefit of the Investors that purchased interests in the MBS Trust ("Certificate Holders" or "Bond Holders"), as described above.

14. If the Note had been successfully sold, negotiated and transferred to DBNTC, and pooled into the Argent Securities Inc., Asset-backed-pass-through Certificates, Series 2004-W8 trust pool, or it were otherwise shown that the pool had an equitable interest in the underlying obligation, the underlying has nevertheless been fully discharged by payments from Plaintiff and from third parties for which Plaintiff is legally entitled to be credited. Assuming the Note was successfully pooled into ownership in trust for Certificate Holders, payments were made to or on behalf of said Certificate Holders by third party sources, such as Credit Default Swap ("CDS") sellers. Some of these payments were made pursuant to contractual provisions that were triggered when occurred what are sometimes called, "Credit Events." The contractual provisions are contained in the securitization documents, and in CDS contracts, in the case of CDS payments. The CDS contracts were purchased to insure the investments of the Certificate Holders. Plaintiff is

8

legally entitled to receive credit reducing his obligation for third party payments, aka "miscellaneous payments."

15. All third party or miscellaneous payments for which Plaintiff claims entitlement to credit were made by sources that are not excluded in the DOT from those Plaintiff is entitled to be credited. They were all made by or on behalf of a party obliged to pay the instrument and to or on behalf of a party entitled to enforce the instrument. The legal right to such credits is contractual, statutory and is recognized in the common law. The right to said credits is pursuant to provisions in the DOT, statutory law and common law. These credits, plus the amounts paid by Plaintiff, exceed the amount of Plaintiff's obligation. Therefore, nothing is owed on the Note and Plaintiff is entitled to a release of the Note and Deed of Trust in a form that is recordable.

16. The only 3rd Party payments that Plaintiff was contractually not entitled to be credited for, pursuant to the DOT, were Mortgage Insurance payouts, casualty insurance payouts and title insurance payouts. All other third party payments made on the Note are called "Miscellaneous Proceeds" in the DOT.[2] The DOT provides that Miscellaneous Proceeds are to be applied to the obligation the same way that mortgage payments are to be applied.

> Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

¶ 11 of DOT on page 8. The "Miscellaneous Proceeds" provisions in the DOT are standard DOT form provisions. These provisions are in agreement with the U.C.C., "discharge by

---

[2] DOT, p2, ¶ M.

9

payment" rule that provides that payments made by or on behalf of a party obliged to pay the Note to a party entitled to enforce it discharges the obligation of Plaintiff. ARS § 47-3602(A).

> . . . an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged . . .

A mortgagee or a beneficiary to a note and deed to trust is entitled to only one satisfaction of his debt prior to the discharge of the mortgagor or obligor.

17. If there happens to be an entity that purchased the Note or was otherwise transferred possession and ownership subsequent to ownership of the Note by the MBS Trust, that entity cannot be a holder in due course, for several reasons, not all set forth herein. Accordingly, even if there were such an entity, Plaintiff would nevertheless be entitled to his rightful credits, described above. A.R.S. §47-3306, states:

> A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument **or its proceeds**, including a claim to rescind a negotiation and to recover the instrument **or its proceeds**.

Emphasis added.

18. If there is any entity that can prove itself to be the owner of the Note and/or obligation, Plaintiff alleges that the evidence will show that Plaintiff has been discharged by satisfaction, as described above, from the entire obligation by a combination of payments from Plaintiff plus payments from third party sources. This discharge of obligation may have occurred while the entity claiming the right to enforce the Note owned it in trust for Certificate Holders or it may have occurred prior to said party obtaining the Note or its claim that it is entitled to payments thereon. If such a party comes forward claiming to own

10

the Note, Plaintiff is entitled to a complete accounting of all third party or miscellaneous payments made to or for the benefit of the Certificate Holders of any MBS Trust that own the Note.

INTENTIONAL SEPARATION OF OWNERSHIP OF NOTE FROM OWNERSHIP OF DOT

19. Additionally and in the alternative, Plaintiff contends that the evidence will show that at some point, the owner of the Note intentionally separated ownership of the Note from ownership of the rights to the Property contained in the DOT, thereby rendering the obligation unsecured.

DECLARATORY RELIEF AGAINST DBNTC

20. Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and FRCP 57, and A.R.S. § 12-1831, et seq, against DBNTC as follows: A) The sale, negotiation and transfer of the Note to DBNTC was not perfected, pursuant to the terms of the securitization documents. B) DBNTC is not a HDC of the Note. C) DBNTC is not the holder of the Note. D) DBNTC does not own any interest, beneficial or otherwise, in the Note nor in the underlying debt evidenced by the Note. E) DBNTC does not have the right to enforce the Note. F) That DBNTC does, or does not, have possession of the original Note. G) Plaintiff is not indebted to DBNTC. H) DBNTC has no security interest in the Property.

ACCOUNTING AND CREDIT FOR THIRD PARTY PAYMENTS

21. Additionally and in the alternative, if DBNTC proves any right to payment on the underlying obligation, Plaintiff seeks complete accounting for all 3rd Party Payments made to or on behalf of the Certificate Holders, and a judgment for credits he is entitled to for 3rd Party Payments made against the underlying obligation, and a declaratory judgment specifying the same facts, as well as the amount of any remaining obligation and whether

11

or not any such remaining obligation is secured by the DOT, or otherwise.

JUDGMENT FOR QUIET TITLE

22.  An action for Quiet Title is governed by Arizona law. A.R.S. §12-1101, et seq. It is appropriate to bring an action to enforce a state statute in federal court, pursuant to 28 U.S.C. §1652. Plaintiff is entitled to and requests a Judgment for Quiet Title against DBNTC.

PERMANENT INJUNCTION

23.  28 U.S.C. Rule 65 and FRCP 65 provide the federal bases for Injunctions and Restraining Orders, which would be applicable to the extent the requested relief would be procedural. A.R.S. § 12-1801, et seq, governs the statutory basis for injunctions under Arizona state law.  Plaintiff seeks a permanent injunction against Argent and DBNTC, and all its agents and any others acting on their behalf. This includes a permanent injunction from ever attempting to take any action contrary to Plaintiff's quiet title, including but not limited to attempting to collect on or enforce the Note, the underlying obligation or the DOT, and executing any documents of transfer of any interest in the Note, the underlying obligation or DOT.

ATTORNEY'S FEES

24.  Plaintiff requests Attorney's Fees based on express and/or implied contract, intentional tort and/or on the basis that DBNTC has acted improperly.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court for the following relief, as requested above: That the Objecting to the Proof of Claim be sustained; for an order to produce the original Note for Quiet Title; for Declaratory Relief; for a Permanent Injunction; and/or a Conditional order directing a complete accounting for 3rd

12

party payments including but not limited to CDS payments, and a judgment for credit for 3rd party payments; that Plaintiff be granted a recordable satisfaction of debt and release of lien.

Dated: January 12, 2011.

Respectfully submitted,

Ronald Ryan, Plaintiff's Counsel

13